IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

WILLIAM CLAYTON CHOATE                                          PLAINTIFF

v.                              Civil No. 4:20-cv-04109

SHERIFF JACKIE RUNION; CAPTAIN
GOLDEN ADAMS; NURSE STEPHEN KING;
WARDEN JEFFIE WALKER; DR. KEVIN
MCCAIN; and AL LANDRETH, Jail Administrator              DEFENDANTS

## ORDER

Before the Court is Plaintiff's Motion for Court Approval of Discovery Requests. (ECF

No. 92).[1] Defendants have filed Responses in Opposition to the motion. (ECF Nos. 93, 94).

## I.      BACKGROUND

Plaintiff submits the following discovery requests for the Court's approval:

1. (Interrogatory #1) Please list MCDC employees or staff responsible/involved in
creating any and all Covid-19 policy at the beginning of the pandemic.

2. (Interrogatory #2) List MCDC employees or staff responsible for revising
pandemic/Covid-19 related policy based on new information and guidance as it was
released from state agencies (CDC and Arkansas Department of Health).

3. (Admission #1) From March 2020 – August 2020, MCDC/MCSO (Miller
County Sheriff's Office) had no policy or custom regarding testing practices of
inmates with suspected Covid-19, and proper quarantining of upon positive or
negative confirmation.

4. (Admission #2) From March 2020 – August 2020, Inmates who had Flu-like or
Covid-like symptoms were quarantined together without being tested or confirmed.

5. (Admission #3) From March 2020 – August 2020, MCDC/MCSO had no policy

---

[1] On November 3, 2021, the Court entered an order after a discovery zoom status conference was held the previous
day. (ECF No. 88). The Order addressed various deadlines and granted Plaintiff's motion to add an eighth claim
against Defendants for failure to train but denied Plaintiff's request to add Southern Health Partners, Inc. as a new
Defendant. In addition, the Order stated, "No additional discovery will be allowed by any party unless the party
requests permission of the Court and provides the Court with the exact discovery to be propounded." *Id.*

or custom in place to administer Covid-19 tests to inmates.

6. (Admission #4) In June 2020, when MCDC staff tested positive for Covid-19 (already admitted in previous discovery), MCDC/MCSO employees were all sent to get tested off-site.

7. (Interrogatory #3) List MCDC officials who made the decision to not test the inmate population once there were confirmed positive staff members (June 2020).

8. (Admission #5) Even though in June 2020, there were confirmed positive Covid staff, MCDC didn't hand out (mass) masks to the inmate population until the end of June 2020, 2 weeks after staff were confirmed positive.

9. (Interrogatory #4) List MCDC employees responsible for creating a policy or custom of housing Covid-19 quarantining inmates in Max Alpha.

10. (Admission #6) From March 2020 – February 2021, MCDC had a policy or custom of housing both Disciplinary Inmates and Covid-19 Quarantine Inmates in Max-Alpha at the same time.

11. (Admission #7) Plaintiff, William Choate, was moved in/out of Max Alpha for Disciplinary purposes during the time Max Alpha was also being used for Covid-19 Quarantine.

12. (Interrogatory #5) List MCDC employees responsible for creating policy or custom of cleaning Max Alpha and Max Echo lockdown cells only on Fridays during the pandemic.

13. (Admission #8) MCDC did not revise its policy or custom to only clean Max Alpha and Max Echo lockdown cells only on Fridays, even though CDC and ADH recommended cleaning more frequently to control the spread of Covid-19.

14. (Interrogatory #6) List MCDC Employees from November 2020 – January 2021, who were responsible for ensuring lockdown (Max Echo) cells were cleaned according to schedule, specifically which shift supervisors were responsible for making sure lower officers carried out these duties.

15. (Admission #9) Even after numerous grievances from William Choate and Randal Morris, MCDC staff never investigated, or tried to provide remedy, as to why inmates from November 2020 - January 2021 were not getting cleaning supplies in Max Echo.

16. (Admission #10) Through recent press releases and newspaper articles (Arkansas Democrat Gazette, MCDC/MCSO has admitted ongoing issues of

overcrowding inside the jail, and this creates problems with Covid-19 social-distancing and quarantine practices.

17. (Admission #11) During the pandemic, specifically from March 2020 – February 2021, outside agencies urged MCDC to find other avenues to reduce its population in order to effectively protect inmates and staff from Covid-19.

18. (Interrogatory #7) List all MCDC employees involved in creating, maintaining, and revising/updating policy and customs aimed at preventing/alleviating overcrowding in the jail during the pandemic, specifically from March 2020 – February 2021.

19. (Admission #12) MCDC/MCSO never during the pandemic months of March 2020 – February 2021, evaluated and made revisions, or worked with outside agencies to alleviate overcrowding once it was realized the current policy or customs were insufficient.

20. (Admission #13) MCDC was unable to achieve success in keeping the jail from being overcrowded during the months of March 2020 – February 2021.

21. (Interrogatory #8) List MCDC and Southern Health Partners responsible for supervising nurses and medical staff to ensure they wore CDC recommend PPE when dealing with potential positive Covid-19 inmates.

22. (Interrogator #9) List Southern Health Partners custom or policy on testing and quarantining of inmates who complain of Covid-19 symptoms, policy that was in place from June 2020 – February 2021.

23. (Admission #14) During the mass Covid outbreak in June and July 2020, Southern Health partners Staff inside the MCDC facility, did not wear CDC recommended PPE such as gloves, mask, gown, and shield when dealing/interacting with Plaintiff William Choate and other in West Echo Quarantine and Max Bravo who were potential positive and confirmed Covid positive.

24. (Interrogatory #10) List both MCDC and Southern Health Partners policy or custom on potential and confirmed positive Covid-19 staff, in relation to testing, Quarantine away from work, and when they may return to work.

25. (Interrogatory #11) List MCDC and SHP officials who made the decision to allow Covid positive staff to remain at work during the June and July 2020 outbreak, without completing the CDC and ADH recommended 14 day (at home) quarantine.

3

(ECF No. 92, pp. 3-8.) Plaintiff states, "These Requests are directed towards all Defendants…(these requests are based off of information relating to Failure Train or Supervise, and have at no time been propounded to Defendants in earlier discovery)." *Id.* at p. 3.

In response Defendants argue Plaintiff's requests are not proportional to the needs of his claim for failure to train or supervise. (ECF Nos. 93, 94). In addition, they state, "Only Item 21 (requested Interrogatory No. 8) remotely seeks discovery related to this claim. Even so, the requested interrogatory is not limited in time and scope. The response to the pandemic was fluid and ever-changing, and Plaintiff has not verbalized any specific time frame or specific PPE recommendations to which he refers." (ECF No. 93). Further, the Miller County Defendants represent to the Court they have produced approximately 1018 pages to Plaintiff and answered multiple discovery (including 50 requests for admission). (ECF No. 94, p. 2). Defendants ask the Court to deny Plaintiff's motion for more discovery. *Id.*

Plaintiff's claim for failure to train is set forth in his Motion to Supplement Complaint. (ECF No. 77). He describes this claim as follows:

> The 8th and 14th Amendments provide protection from the infliction of cruel and unusual punishment. Defendants failure to train or supervise, failure to enforce its policy, failure to re-evaluate current policy based on new information and circumstances related to Covid-19 CDC and ADH recommended guidance, and failure to hold accountability on staff who didn't follow policy, all led to the existence of a continuing, wide-spread, and persistent pattern of unconstitutional misconduct of MCDC's and Southern Health Partners Inc. employees. This persistent pattern of misconduct led to acts and omissions which resulted in Plaintiff's injury(s) (was the main force behind the violations).
>
> Plaintiff asserts that in light of supervisory officials role in the guiding principles and the duties assigned to specific officers, the need for more or different training, re-evaluation of policy, and the enforcement of adequate policy were so obvious, and the insufficiency likely to result in constitutional violations. The policy makers and enforcing officials of both MCDC and Southern Health Partners, Inc. can reasonably be said to have been deliberately indifferent to Plaintiff's needs…

4

*Id.* at pp. 2-3.   As previously stated, the Court ruled that this claim may proceed although the claim

was simply described as "failure to train". (ECF No. 77).

## II.      APPLICABLE LAW

The scope of discovery in a civil case is governed by Federal Rule of Civil Procedure 26,

which provides in part:

> Unless otherwise limited by court order, the scope of discovery is as follows:
> Parties may obtain discovery regarding any nonprivileged matter that is relevant to
> any party's claim or defense and proportional to the needs of the case, considering
> the importance of the issues at stake in the action, the amount in controversy, the
> parties' relative access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and whether the burden or
> expense of the proposed discovery outweighs its likely benefit.   Information
> within this scope of discovery need not be admissible in evidence to be
> discoverable.

Fed. R. Civ. P. 26(b)(1).

> On motion or on its own, the court must limit the frequency or extent of discovery
> otherwise allowed by these rules or by local rule if it determines that:
> (i)      The discovery sought is unreasonable, cumulative or duplicative, or can be
>           obtained from some other source that is more convenient, less burdensome,
>           or less expensive;
> (ii)     The party seeking discovery has had ample opportunity to obtain the
>           information by discovery in the action; or
> (iii)    The proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P.   26(b)(2)(C).   Further, under rule 26(c), "[t]he Court may, for good cause, issue

an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden

or expense."   Fed.R.Civ.P. 26(c).

The burden is generally on the party resisting discovery to show why discovery should be

limited.   *Cincinnati Ins. Co. v. Fine Home Managers, Inc.*, 2010 WL 2990118, at *1 (E.D. Mo.

July 27, 2010).   In carrying this burden, the objecting party cannot rely on mere statements and

conclusions but must specifically show how the objected-to disclosures would be irrelevant or overly burdensome, overly broad, or oppressive. *See St. Paul Reinsurance Co., Ltd. v. Comm. Fin. Corp.*, 198 F.R.D. 508, 511-12 (N.D. Iowa 2000) (collecting cases).

### III.    DISCUSSION

Plaintiff argues the discovery requests set forth above are related to his claim against Defendants for failure to train or supervise and he states, "These requests have at no time been propounded to Defendants in earlier discovery…" (ECF No. 92, p. 3). Defendants generally state all but one of his requests are not related to his claim, most requests involve various customs or policies, and they have already responded to numerous requests for admission, interrogatories and produced hundreds of pages of documents.

A supervisor can be held liable if he failed to train or supervise the offending actor who ultimately caused a constitutional deprivation. *Audio Odyssey, Ltd. v. Brenton First Nat'l. Bank*, 245 F.3d 721, 742 (8th Cir. 2001). Even if there are no policies or training on how to handle situations, there must first be an obvious need for training before a failure to have it will be considered a constitutional violation. *Mendoza v. United States Immigration and Customs Enforcement,* 849 F.3d 408 (8th Cir. 2017) citing *City of Canton, Ohio v. Harris,* 489 U.S. 378 (1989). However, when policy makers are on actual or constructive notice that omissions in their training program cause employees to violate someone's constitutional rights, the municipality or employer may be deemed "deliberately indifferent" and thus liable under 1983 for resulting constitutional violations if policy makers choose to retain that program. *Connick v. Thompson,* 563 U.S. 51, 61 (2011). Moreover, a pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate "deliberate indifference," for purposes of holding a municipality or employer liable on failure to train theory under 1983. *Id.* at p. 62.

The Court finds Plaintiff's discovery requests are relevant and proportional to Plaintiff's

failure to train claim. Moreover, Defendants have not established the discovery requests are burdensome, overly broad, or oppressive.   Accordingly, all of Plaintiff's discovery requests are approved by the Court.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Court Approval of Discovery Requests (ECF No. 92) is **GRANTED**.

**Defendants are ORDERED to answer the discovery requests within 30 days of the date of this order.**

**IT IS SO ORDERED** this 7th **day of January 2022**.

/s/ *Barry A. Bryant*
_____
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE

7