IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION


WILLIAM CLAYTON CHOATE                                                          PLAINTIFF

v.                                     Civil No. 4:20-cv-04109-BAB

SHERIFF JACKIE RUNION;
CAPTAIN GOLDEN ADAMS;
NURSE STEPHEN KING; WARDEN
JEFFIE WALKER; DR. KEVIN MCCAIN;
and AL LANDRETH                                                                 DEFENDANTS


## MEMORANDUM OPINION

This is a civil rights action filed *pro* se by Plaintiff, William Clayton Choate, under 42 U.S.C. § 1983.  On February 10, 2021, the parties consented to have the undersigned conduct all proceedings in this case including a jury or nonjury trial and to order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  (ECF No. 16).

Plaintiff names as Defendants Sheriff Jackie Runion, Captain Golden Adams, Nurse Stephen King, Warden Jeffie Walker, Dr. Kevin McCann,[1] and Al Landreth.  Plaintiff claims Defendants violated his constitutional rights in both their individual capacities as well as official capacities.  Currently before the Court, is Defendants, Sheriff Jackie Runion, Captain Golden Adams, Warden Jeffie Walker, and Al Landreth's (hereinafter "County Defendants") second Motion for Summary Judgment.[2]  (ECF No. 176).  Plaintiff has filed a Response (ECF No. 187).

---

[1] Defendant McCann is incorrectly identified in the case caption as Dr. Kevin McCain.
[2] Defendants Nurse Stephen King and Dr. Kevin McCann have filed a separate second Motion for Summary Judgment, and that Motion was addressed by separate Opinion.  (ECF No. 189).

1

## I.     FACTUAL BACKGROUND

Plaintiff is currently incarcerated in the Arkansas Department of Corrections Texarkana Regional Correction Center in Texarkana, Arkansas. His claims in this action arose while he was housed in the Miller County Detention Center ("MCDC") in Texarkana, Arkansas.

At all times relevant to Plaintiff's claims Defendant Walker was the Warden at the MCDC, Defendant Runion was the Sheriff of Miller County, Arkansas, Defendant Adams was a Captain at the MCDC, and Defendant Landreth was the Jail Administrator at the MCDC. (ECF No. 154, p. 2).

On March 7, 2020, Plaintiff was booked into the custody of the MCDC. (ECF No. 176-2, p. 1). Plaintiff was convicted on August 6, 2020, (ECF No. 1, p. 4), and later transferred to the Arkansas Department of Corrections.

On March 23, 2020, the MCDC promulgated the Standard Operating Procedure 05.00 Pandemic and Public Health Emergency ("SOP"). The purpose of the SOP was to establish specific MCDC pandemic and public health emergency planning, response, and operational procedures. The SOP applied to all MCDC staff and set out guidance for: the use of Personal Protective Equipment ("PPE"); isolation and quarantine of inmates; screening of inmates, staff, and persons entering the MCDC; cleaning and disinfecting the MCDC; reducing the population of the MCDC; and many other topics related to limiting the transmission of COVID-19. (ECF No. 176-1, pp. 1-9).

The SOP also enumerated Phases of response to the COVID-19 pandemic. The phases were to be implemented depending on the status of the pandemic and the need for additional precautionary policies and procedures. Phase One was implemented on April 30, 2020. Phase

Two was implemented on June 1, 2020. Phase One was reactivated on June 17, 2020. Phase Two was reactivated on September 11, 2020. (ECF No. 176-1, pp. 12-17).

The MCDC had an extensive policy for isolation and quarantine of individuals showing symptoms of COVID-19 or that tested positive for COVID-19. (ECF No. 176, p. 10). In his Affidavit, Defendant Walker stated the MCDC did experience issues with isolation and quarantining due to the space limitations within the MCDC. (ECF No. 176-2, p. 4). Plaintiff does not dispute the fact that the finite space available made isolation difficult in the MCDC. (ECF No. 187, p. 5).

In Plaintiff's current Response he disputes whether supply chain issues caused a lack of available PPE for the MCDC. (ECF Nos. 178, p. 4; 187, p. 6). In previous responses to separate Medical Defendants' second Motion for Summary Judgment, Plaintiff admitted this fact. (ECF No. 173).

The MCDC had a contract with Southern Health Partners, Inc. ("SHP") to provide health services to the inmates and the MCDC staff relied upon the SHP staff for all medical services. (ECF No. 176-2, p. 1). The parties dispute whether SHP and MCDC coordinated training for all staff on the SOP. (ECF No. 187, pp. 4-5). Specifically, Plaintiff claims County Defendants did not train or coordinate training on the SOP because nurses were allowed to pass medications without gloves, and County Defendants failed to supervise MCDC staff and enforce proper use of PPE. *Id.*

It is undisputed that Plaintiff exhibited symptoms of COVID-19 as early as June 22, 2020, and his infection of COVID-19 was later confirmed by testing on July 1, 2020. (ECF No. 153).

It is also undisputed, the MCDC's COVID-19 policies and procedures were based on the evolving medical science as it was understood at the time. Further, Plaintiff does not dispute

Defendant Walker's statement that the policies and procedures represented a good-faith effort to limit the spread of the COVID-19 virus within the MCDC.  (ECF Nos. 178, p. 3; 187, p. 4).

Defendant Walker testifies in his Affidavit:

> As part of the MCDC [SOP], all members of the [MCDC] were trained.  As the phases changed, the staff continued to be trained on updates and the evolving science.  This included training on screening staff and inmates for symptoms of the COVID-19, for proper wearing of PPE including masks and gloves, isolating, and social distancing.
> …
> If a member of the staff was not in compliance with a policy, they were verbally counseled on the policy and procedures and shown how to be in compliance.  I am not aware of any staff member who continually and deliberately ignored the policy and procedures.  MCDC employees were provided a copy of the COVID policies and procedures.  Supervisors were explained the policies and procedures and explained them to the jail staff.  At shift change, briefings would include any changes to protocol as a result of COVID-19.  Administrators, Captains, and the Warden were available to answer questions.
>
> All inmates were given cleaning supplies on a daily basis to allow them to clean their cells and mats.  During COVID-19, this included cleaning supplies that had bleach in them.

(ECF No. 176-2).  Plaintiff disputes each of these statements by Walker in his sworn affidavit. (ECF No. 187).  Specifically, Plaintiff testifies MCDC staff stopped wearing PPE in May 2020, inmates were not provided masks, and in June 2020 he was not provided bleach to clean his living area. *Id.*

Defendant Walker also testified that all testing and contact tracing of COVID-19 was performed by the Arkansas Department of Health ("ADH").  Plaintiff disputes this fact in his Response here, however, in his response to separate Medical Defendants' second Motion for Summary Judgment, Plaintiff admits this fact.  (ECF No. 173).

On December 19, 2020, a mentally ill inmate[3] was moved into the Max Echo pod where Plaintiff was housed, and this inmate was housed in that pod for over thirty days.  (ECF No. 14, p.

---

[3] While the allegedly mental ill inmate is named numerous times by Plaintiff on the record in this matter, the Court finds it unnecessary to include his name herein.  Accordingly, he will be referred to throughout this Opinion as the "mentally ill inmate." The Court notes it has no evidence to

4

6). During this time, the mentally ill inmate banged on his cell door, screamed, and constantly made noises. *Id.* He also caused his urine and feces to leak from his cell into the pod dayroom. *Id.* Plaintiff was unable to sleep during the duration of the mentally ill inmate's housing in Max Echo pod. *Id.* The parties do not dispute these facts.

## II. PROCEDURAL BACKROUND

Plaintiff filed his initial Complaint on December 22, 2020. (ECF No. 1). Subsequently, Plaintiff filed three additional Motions to Supplement his Complaint. (ECF Nos. 14, 17, 18). The Court granted these Motions to Supplement and directed the Motions be filed as Supplements on the docket sheet. (ECF Nos. 19-21).

On October 7, 2021, Plaintiff filed an additional Motion to Supplement Complaint. (ECF No. 77). In this Motion to Supplement, Plaintiff requested leave to supplement his complaint with an additional claim of failure to train or supervise, and one new Defendant, SHP. *Id.* This Motion was the first time Plaintiff asserted a failure to train or supervise claim in this matter. The Court addressed this Motion to Supplement along with discovery matters at a status conference on November 2, 2021. (ECF No. 80). On November 3, 2021, the Court entered an Order addressing issues raised at the status conference. (ECF No. 88). In this Order, the Court granted Plaintiff leave to supplement his Complaint by adding the claim of failure to train or supervise but denied his addition of SHP as a Defendant. *Id.* However, the Court did not provide any specific direction to the Plaintiff to file a Supplement to his Complaint, and no such filing was made. *Id.* Accordingly, the Court will consider the Motion to Supplement filed on October 7, 2021 at Document Number 77 as the Supplement to Plaintiff's Complaint.

---

establish this inmate was in fact mentally ill, however, it assumes *arguendo* for the purposes of this Opinion since the parties do not dispute this fact.

In this Supplement filed on October 7, 2021, Plaintiff asserts the claim presently at issue. Plaintiff's "Claim 8" is a failure to train or supervise claim alleged against the County Defendants. (ECF No. 77).  Plaintiff alleges County Defendants failed to train or supervise on many issues: (1) inadequate social distancing to prevent the spread of COVID-19; (2) inadequate use of PPE to prevent spread of COVID-19; (3) COVID-19 positive staff working with symptoms; (4) inadequate sanitation of the MCDC to prevent the spread of COVID-19; (5) inadequate testing for COVID-19 and contact tracing positive cases; (6) inadequate quarantining and isolating inmates to prevent the spread of COVID-19; (7) inappropriate housing of mentally ill inmates; and (8) banning of newspapers. (ECF No. 77, pp. 5-10).

On March 8, 2023, the County Defendants, filed their first Motion for Summary Judgment with accompanying Brief and Statement of Facts.  (ECF Nos. 118, 119, 120).  On August 16, 2022, the Court issued a Memorandum Opinion granting in part and denying in part the County Defendants' Motion for Summary Judgment.  (ECF No. 154).  However, the Court failed to address Plaintiff's failure to train or supervise claim against those County Defendants.  *Id.*

On November 14, 2022, Plaintiff filed a Motion for Information/Relief.  (ECF No. 160). In this Motion, Plaintiff requested information on why his claim for failure to train or supervise was not addressed on summary judgment.  *Id.*  The Court construed this Motion as a Motion to Reconsider its Order on the County Defendants' first Motion for Summary Judgment.

On December 22, 2022, the Court granted Plaintiff's Motion for Reconsideration.  In this Order, the Court: (1) reinstated any previously dismissed County Defendants in this matter; and (2) granted leave to the County Defendants to file a second motion for summary judgment, if they so wished, for the specific purpose of addressing Plaintiff's failure to train claim against them. (ECF No. 165).

On February 20, 2023, the County Defendants filed their second Motion for Summary Judgment, Brief in Support, and Statement of Facts. (ECF Nos. 176, 177, 178). In their second Motion for Summary Judgment, County Defendants argue: (1) Plaintiff's failure to train or supervise claim should be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6); (2) Plaintiff's failure to train and supervise claim is moot; (3) Plaintiff has failed to show any deliberate indifference to his health care; (4) Defendant Runion cannot be liable based on a theory of *respondeat superior*; (5) Plaintiff has not met proof with proof or established any genuine issues of material fact; and (6) if the Court finds any constitutional violations, all County Defendants are entitled to qualified immunity on such violations. (ECF No. 177).

Plaintiff filed a Response to the County Defendants' second Motion for Summary Judgment with incorporated Brief in Support and a Statement of Facts. (ECF No. 187). In his Response, Plaintiff notes he claimed that County Defendants failed to train or supervise related to COVID-19 issues as well as his exposure to a mentally ill inmate. (ECF No. 187, p. 6). County Defendants did not address Plaintiff's failure to train or supervise claim relating to the mentally ill inmate in their second Motion for Summary Judgment. *Id.* Plaintiff argues County Defendants were responsible for enforcing the mentally ill inmate housing policy and procedure and their failure to do so tacitly authorized the inappropriate placement of the mentally ill inmate in Plaintiff's housing pod. *Id.* Plaintiff goes on to argue, Defendants Runion, Walker, and Adams are policy making officials for the MCDC and failed to meet their responsibility of enforcing, training, or supervising regarding the COVID-19 policy and procedures. *Id.* at 14.

The County Defendants did not file a Reply to Plaintiff's Response.

## III. LEGAL STANDARD

As an initial matter, County Defendants argue Plaintiff has failed to state any claim upon which relief may be granted, and his Claim 8[4] should be dismissed pursuant to Federal Rule of Procedure 12(b)(6). Federal Rule of Civil Procedure 12(b)(6) is a pre-answer motion rule. Fed. R. Civ. P. 12(b)(6); *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). Further, Rule 12(b)(6) motions are decided on the pleadings alone. Fed. R. Civ. P. 12. When matters outside the pleadings are presented and considered by the Court, such a motion must be converted to one for summary judgment. *Hamm v. Rhone-Poulenc Rorer Pharmaceuticals, Inc.*, 187 F.3d 941, 948 (8th Cir. 1999). Additionally, County Defendants have titled their motion as one for summary judgment, they have also included the legal standard for summary judgment, and they have attached supporting evidence with matters outside the pleadings. Accordingly, the Court will apply the legal standard of summary judgment under Federal Rule of Civil Procedure 56 and not the standard for a motion to dismiss under Rule 12.

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine

---

[4] County Defendants move for Plaintiff's Claim 7 and then, interchangeably Claim 17, to be dismissed in their second Motion for Summary Judgment. (ECF No. 177). However, Claim 7 is Plaintiff's claim relating to the denial of newspapers which the Court previously addressed in its first Opinion at Document Number 154, and there is no Claim 17 in this matter. Since the County Defendants appropriately define Plaintiff's claim at issue as a failure to train and supervise claim, the Court will proceed with the assumption County Defendants made a typographical error and intended to move for summary judgment on Plaintiff's Claim 8—failure to train and supervise.

issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607. "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. at 610. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris,* 550 U.S. 372, 380 (2007).

Under Section 1983, a defendant may be sued in either his personal capacity, or in his official capacity, or claims may be stated against a defendant in both his personal and his official capacities.  The type of conduct that is actionable and the type of defense available depend on whether the claim is asserted against a defendant in his official or individual capacity. *See Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (internal citations omitted).  "Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself." *Id.*  Personal capacity claims "are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense" to these individual capacity claims. *Id.*  To state a claim under 42 U.S.C. § 1983, Plaintiff must allege that the defendant acted under color of state law, and that the actor violated a right, privilege, or immunity secured by the Constitution. *West v. Atkins*, 487 U.S. 42, 48 (1988);

9

*Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999). The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under Section 1983. *See Daniels v. Williams*, 474 U.S. 327 (1986); *See also Davidson v. Cannon*, 474 U.S. 344 (1986).

Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). To sustain an official capacity claim against such an entity a plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006). Thus, Plaintiff's official capacity claims against County Defendants are "functionally equivalent," *Veatch*, 627 F.3d at 1257, to alleging their employer, Miller County, had "a policy, custom, or [took an] official action" that deprived him of his constitutional rights, *Johnson*, 452 F.3d at 973.

To establish a claim for "custom" liability, Plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the official of that misconduct; and

3) That Plaintiff was injured by acts pursuant to the government entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty Medical Dept.*, 725 F.3d 825, p. 828 (8th Cir. 2013). "A single deviation from a written, official policy does not prove a conflicting custom." *Id.* (quoting *Wedemeier v. City of Ballwin, Mo.,* 931 F.2d 24, 26 (8th Cir. 1991)).

10

## IV. DISCUSSION

The only issue before the Court is whether the County Defendants violated Plaintiff's constitutional rights by failing to train or supervise their subordinates. As explained above, Plaintiff alleges this claim in his Supplement to his Complaint at Document Number 77, and Plaintiff labels this claim as Claim 8. Plaintiff claims County Defendants failed to train and supervise their subordinates at the MCDC in eight specific areas: (1) inadequate social distancing to prevent the spread of COVID-19; (2) inadequate use of PPE to prevent the spread of COVID-19; (3) COVID-19 positive staff working with symptoms; (4) inadequate sanitation of the MCDC to prevent the spread of COVID-19; (5) inadequate testing for COVID-19 and contact tracing positive cases; (6) inadequate quarantining and isolating inmates to prevent the spread of COVID-19; (7) inappropriate housing of mentally ill inmates; and (8) banning of newspapers. (ECF No. 77, pp. 5-10). Plaintiff asserts this Claim 8—failure to train and supervise over all eight topics—against all County Defendants in both their individual and official capacities.

County Defendants move for summary judgment on Plaintiff's failure to train and supervise claim with the following arguments: (1) Plaintiff did not allege which County Defendants failed to train, nor how each County Defendants failed to train; (2) the County Defendants did provide training and supervision to the MCDC employees on COVID-19 procedures and policies; (3) policy and procedures regarding COVID-19 (the SOP) were promulgated and instituted; (4) the SOP addressed all of the COVID-19 topics complained of by Plaintiff; (5) Plaintiff's claims are moot; (6) Plaintiff cannot be successful in *respondeat superior* claims against County Defendants; and (7) if there is any individual liability, the County Defendants are entitled to qualified immunity from any such liability. (ECF No. 176-2).

The Court notes County Defendants only move for summary judgment on subparts 1 – 6 of Plaintiff's Claim 8. County Defendants made many general arguments in their Brief in Support of Summary Judgment relating to their arguments of failure to state a claim, qualified immunity, and *respondeat superior* theories of liability. However, County Defendants did not submit any factual statements, evidence, or arguments related to Plaintiff's mentally ill inmate claim or newspaper claim. Accordingly, the Court will not address Plaintiff's failure to train and supervise claim related to the mentally ill inmate and ban on newspapers under the individual capacity or official capacity sections herein.

### A. Plaintiff's Claim 8 is ripe for consideration

Plaintiff's failure to train and supervise claim is not moot. The Court has not previously ruled upon this claim, and the claim is now ripe for consideration. The facts alleged occurred while Plaintiff was housed at the MCDC. Plaintiff is not seeking injunctive relief, so his transfer from the MCDC does not render his claim moot. The Court is able, at this time, to grant Plaintiff relief on his injury should his claim so warrant. *See Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 571 (1984) ("[a]s long as the parties have a concrete interest in the outcome of the litigation, the case is not moot . . .").

### B. *Respondeat superior* theory of liability

County Defendants are correct that no claim of liability may rest on a *respondeat superior* theory alone. Here, however, Plaintiff has alleged a failure to train and supervise claim against County Defendants which is a viable claim of liability for supervisors. *See Tilson v. Forest City Police Dept.*, 28 F.3d 802, 806 (8th Cir. 1994).

### C. Individual capacity claims

In cases brought under Section 1983, supervisors are not liable for constitutional violations committed by their subordinates simply because they are their supervisors; instead, Plaintiff must plead each County Defendant, "through [his] own individual actions," has violated the Constitution. *Marsh v. Phelps Cty*, 902 F.3d 745, 754 (8th Cir. 2018). (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). Supervisors are only liable for their own misconduct. *Ashcroft*, 556 U.S. at 677. However, a prison supervisor can be held liable for failing to train or supervise subordinates when that failure caused the constitutional violation. *Tilson*, 28 F.3d at 806.

To state an individual capacity claim for failure to train or supervise there must be allegations: (1) the supervisor knew of a pattern of unconstitutional acts committed by the subordinate; (2) the supervisor demonstrated deliberate indifference to, or unspoken authorization of, constitutional violations committed by subordinates; (3) the supervisor failed to take appropriate remedial action after learning of a subordinate's misconduct; and (4) the plaintiff was injured as a result of the failure to properly train or supervise subordinates. *Otey v. Marshall*, 121 F.3d 1150, 1156 (8th Cir. 1997). The standard for proving deliberate indifference is high. Even where prison officials know of a substantial risk to inmate health or safety, they are not liable, "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

      **i.**      **Previous findings by the Court**

The Court, in the first round of summary judgment motions, considered Plaintiff's complaint of failure to protect from COVID-19. Within the first set of claims, Plaintiff alleges some of the same underlying acts as he alleges in his instant failure to train and supervise claim: (1) inadequate social distancing to prevent the spread of COVID-19; (2) inadequate use of PPE to prevent the spread of COVID-19; (3) inadequate sanitation of the MCDC to prevent the spread of

COVID-19; (4) inadequate testing for COVID-19 and contact tracing positive cases; and (5) inadequate quarantining and isolating inmates to prevent the spread of COVID-19. In its previous Opinion, the Court held the summary judgment record did not show a genuine dispute of material fact as to any constitutional violations based on these same five complaints. (ECF No. 154, pp. 11-13). The Court found no constitutional violation for failure to protect Plaintiff from the spread of COVID-19.

As explained above, the first element of a failure to train or supervise claim is: whether the supervisor knew of a pattern of unconstitutional acts committed by their subordinates. Without an underlying unconstitutional act by subordinates, Plaintiff cannot satisfy this first element. The Court has considered all evidence[5] produced in the instant record, in the light most favorable to Plaintiff, and the Court is not dissuaded from its original finding. Just as in the first set of summary judgment briefing, Plaintiff has failed to show a genuine dispute of material fact as to an underlying constitutional violation related to: 1) inadequate social distancing to prevent the spread of COVID-19; (2) inadequate use of PPE to prevent spread of COVID-19; (3) inadequate sanitation of the MCDC to prevent the spread of COVID-19; (4) inadequate testing for COVID-19 and contact tracing positive cases; and (5) inadequate quarantining and isolating inmates to prevent the spread of COVID-19.[6]

---

[5] The Court has not considered evidence from the summary judgment record which would be inadmissible hearsay. *See Shaver v. Independent State Co.,* 350 F.3d 716, 723 (8th Cir. 2003) (explaining inadmissible evidence may not be used to defeat summary judgment).
[6] Plaintiff has also produced conflicting testimony in the instant summary judgment record. In his Response to the Medical Defendants' second Motion for Summary Judgment, filed prior to the instant Motion, Plaintiff admits: (1) the MCDC is a finite space and appropriate social distancing was not always available; (2) testing and contact tracing of COVID-19 was the responsibility of the ADH; (3) supply chain issues caused unavailability of PPE at times in the MCDC; and (4) the MCDC nursing staff and MCDC corrections staff implemented extensive policies for isolation and quarantine of individuals showing signs of COVID-19 or that tested positive for COVID-19. (ECF

As previously explained:

> The Court is keenly aware of the significant health risks associated with COVID-19 and the ease with which this disease is transmitted, especially in a prison setting." *Tate v. Arkansas Dept. of Corr.,* No. 4:20-cv-0558, 2020 WL 7378805, *8 (E.D. Ark. Nov. 9, 2020). However, "[t]he prison is a finite space. It would be impossible to isolate every inmate who is *potentially* infected—the prison does not have enough space to house each such inmate in a single cell." *Kesling v. Tewalt,* 476 F. Supp. 3d 1077, 1088 (D. Idaho 2020) (emphasis in original).
>
> As judges, our conscribed role is not to assess whether [the County Defendants] could have done more to contain the virus—no doubt they could have. Our limited role is thus to determine whether [the County Defendants] ha[ve] made the requisite showing that [their] efforts to combat COVID-19 satisfied the constitutionally required minimum." *Valentine v. Collier*, 978 F.3d 154, 158 (5th Cir. 2020). The Court notes while Plaintiff alleges the County Defendants failed to comply strictly with the guidelines of the [Center of Disease Control ("CDC")], the failure to enact or comply with these guidelines does not equate to the violation of the Eighth Amendment. *Id*. at 164 ('The Eighth Amendment does not enact the CDC guidelines.'). Moreover, '[w]hat we know about COVID-19 and the spread of the novel coronavirus is constantly changing, as new information is released by medical researchers, agencies, and other authorities.' *Kesling,* 476 F.Supp.3d at 1087 (D. Idaho 2020).

(ECF No. 154, pp. 11-13).

Furthermore, the crux of Plaintiff's failure to train complaints relating to subparts 1- 5 is that County Defendants failed to follow guidelines instituted by the ADH, the CDC, or Arkansas Jail Standards. The failure to enact or comply with guidelines or state laws and regulations does not equate to a constitutional violation. *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993); *see also Valentine v. Collier*, 978 F.3d 154, 158, 164 (5th Cir. 2020).

Accordingly, there are no genuine disputes of material facts relating to whether there was a pattern of constitutional violations known by County Defendants because Plaintiff's has failed to state an underlying unconstitutional act relating to: 1) inadequate social distancing to prevent

---

No. 173, p.1). In Plaintiff's Response to the instant Motion, he disputes each one of these facts. The Court is not required to adopt a version of the facts blatantly contradicted by the record. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

the spread of COVID-19; (2) inadequate use of PPE to prevent spread of COVID-19; (3) inadequate sanitation of the MCDC to prevent the spread of COVID-19; (4) inadequate testing for COVID-19 and contact tracing positive cases; and (5) inadequate quarantining and isolating inmates to prevent the spread of COVID-19. County Defendants are entitled to summary judgment on the individual capacity failure to train and supervise claim regarding subparts 1 – 5.

### ii.   COVID-19 positive staff

The only subpart of Plaintiff's failure to train and supervise claim not previously addressed by the Court as an underlying constitutional violation relates to COVID-19 positive officers allowed to work. Specifically, Plaintiff claims:

> Defendants failed to follow CDC and ADH recommended guidance when COVID-19 positive staff entered the facility and subjected its population to exposure of the virus. This happened at two times (known), June 10-20 when positive staff were allowed to enter the facility due to improper screening of employees and July 1st – 10th when confirmed COVID-19 officers were allowed to remain at work within the facility. Defendants (1) failed to enforce its policy requiring screening of all employees before entry into the facility (2) failed to train or supervise, resulting in violation of existing policy requiring no COVID-19 positive (or experiencing symptoms) officers/staff to enter the facility.

(ECF No. 77, pp. 6-7) (errors in the original).

Plaintiff also testified in his sworn affidavit that officers which tested positive for COVID-19 were allowed to continue working at the MCDC. (ECF No. 187, p. 70). County Defendants admitted this fact in their Responses to Requests for Admissions which Plaintiff attached to his Response. (ECF No. 187, p. 63). In his Request for Admissions, Plaintiff requested:

> After the positive Covid-19 test results were returned around July 6th, 2020, MCDC allowed positive Covid-19 infected correctional officers to remain at work without participating recommended participating the 14-day isolation/self-quarantine.

*Id.* (errors in original).  County Defendants responded: "Denied as written but admits that some positive officers were allowed to remain at work under continuous monitoring." *Id.*

County Defendants do not make a specific dispute to this subpart of Plaintiff's failure-to-train claim in their Motion.  They do, however, argue County Defendants did in fact train MCDC employees on the COVID-19 related policy and procedures in place.  Further, County Defendants argue they trained subordinates on the changing status of such policies as the information available changed and the science evolved.  (ECF No. 177, pp. 10-11).  Furthermore, County Defendants did submit policy and procedure regarding screening of staff members to the summary judgment record.

In order to establish a failure to train claim, Plaintiff must show: (1) County Defendants knew of a pattern of COVID-19 positive staff continuing to come into the MCDC to work and that this violated Plaintiff's constitutional rights; (2) County Defendants demonstrated deliberate indifference, or unspoken authorization, to this violation by failing to train and supervise the violators; (3) County Defendants failed to remedy this violation; and (4) Plaintiff was injured as a result of the failure to properly train or supervise subordinates regarding working while positive with COVID-19.  *See Otey v. Marshall*, 121 F.3d 1150, 1156 (8th Cir. 1997).

The County Defendants' admission that some COVID-19 positive staff members were allowed to work despite policy and procedure to the contrary, satisfies many of the elements of Plaintiff's failure to train or supervise claim.  First, County Defendants' admission proves their knowledge of the underlying action, and it also proves they allowed it to continue without a remedy.  The Court must now determine: (1) whether such an allowance was a constitutional violation through deliberate indifference to the risk of infecting Plaintiff with COVID-19; and (2)

whether that deliberate indifference caused Plaintiff's injury—his infection with COVID-19. *See Otey*, 121 F.3d at 1156.

The Court need not determine here whether County Defendants failure to train was deliberately indifferent to Plaintiff because there is no genuine issue of material fact as to whether the County Defendants' actions caused Plaintiff's injury. It is undisputed that Plaintiff exhibited symptoms of COVID-19 as early as June 22, 2020, and his infection of COVID-19 was later confirmed by testing on July 1, 2020. (ECF No. 153). County Defendants' allowance of COVID-19 positive staff to work at the MCDC after July 6, 2020 could not have caused Plaintiff's injury as he was already infected prior to the complained of action. Accordingly, the final element of Plaintiff's failure to train claim is not satisfied, and the claim must fail as a matter of law.

**D.  Official capacity**

Plaintiff also alleges his Claim 8 against County Defendants in their official capacities. As previously noted, "[c]laims against individuals in their official capacities are equivalent to claims against the entity for which they work…" *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998). Here, this means Plaintiff's official capacity failure to train claim against the County Defendants is essentially a claim against their employer—Miller County. To be successful on such a claim, Plaintiff will need to show Miller County itself caused the constitutional violation. *See Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006). However, as the Court has determined Plaintiff failed to prove a cognizable failure to train or supervise claim against County Defendants in their individual capacities on subparts 1-6, there can be no official capacity claim on those same subparts. *See McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005) (The Eighth Circuit has consistently recognized without an underlying substantive constitutional violation against a defendant in their individual capacity, a Plaintiff cannot be successful on an official capacity claim

against that defendant's employer). Stated another way, as the Court has found County Defendants did not violate Plaintiff's constitutional rights through a failure to train or supervise on subparts 1 – 6, Miller County, as County Defendants' employer, cannot be liable for any failure to train claim on subparts 1-6.

Accordingly, County Defendants are entitled to summary judgment on Plaintiff's official capacity claim for failure to train and supervise related to: (1) inadequate social distancing to prevent the spread of COVID-19; (2) inadequate use of PPE to prevent the spread of COVID-19; (3) COVID-19 positive staff working with symptoms; (4) inadequate sanitation of the MCDC to prevent the spread of COVID-19; (5) inadequate testing for COVID-19 and contact tracing positive cases; and (6) inadequate quarantining and isolating inmates to prevent the spread of COVID-19.

As stated with the individual claims, County Defendants did not move for summary judgment on Plaintiff's official capacity claims related to the mentally ill inmate or the ban on newspapers. Therefore, those official capacity claims shall survive.

## V. CONCLUSION

For the reasons stated above, I recommend the County Defendants' Second Motion for Summary Judgment (ECF No. 176) be **GRANTED,** and Plaintiff's failure to train or supervise claim against County Defendants in their individual and official capacities regarding (1) inadequate social distancing to prevent the spread of COVID-19; (2) inadequate use of PPE to prevent the spread of COVID-19; (3) COVID-19 positive staff working with symptoms; (4) inadequate sanitation of the MCDC to prevent the spread of COVID-19; (5) inadequate testing for COVID-19 and contact tracing positive cases; (6) inadequate quarantining and isolating inmates to prevent the spread of COVID-19, be **DISMISSED WITH PREJUDICE**. However, Plaintiff's

failure to train or supervise claim relating to: (7) the inappropriate housing of mentally ill inmates; and (8) the banning of newspapers, shall remain for further litigation.

After all four Motions for Summary Judgment have been addressed, the following claims and Defendants remain for further litigation:

(1) Individual capacity claim regarding the improper placement of the mentally ill inmate causing excessive noise against Defendant Walker (Plaintiff's Claim 5);

(2) Individual and official capacity claim for the failure to train or supervise regarding the placement of mentally ill inmates against all County Defendants (Plaintiff's Claim 8);

(3) Individual and official capacity claim for the failure to train or supervise regarding the ban on newspapers against all County Defendants (Plaintiff's Claim 8);

(4) Official capacity claim regarding the improper placement of the mentally ill inmate causing excessive noise against all County Defendants (Plaintiff's Claim 5); and

(5) Official capacity claim regarding the ban on newspapers against all County Defendants (Plaintiff's Claim 7).

**IT IS SO ORDERED this 11th day of September 2023.**

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE